### GOVERNOR, OPINION OF THE COURT IN RESPONSE TO.

1. *Constitution — Opinion of Supreme Court — Governor entitled to, when.—* The judges of the Supreme Court have the right to determine for themselves whether the "occasion" is such as, under section 11, art VI, of the State constitution, to warrant the governor in calling upon them for their opinion.

2. *Bonds, Pacific Railroad — Payable, when — Out of what fund — By whom — In what money.—* 1. The State Pacific Railroad bonds of January 15, 1852, are payable twenty years from date, and the time of their payment is not postponed by the provision incorporated in the bonds making them redeemable, in the pleasure of the Legislature, at any time after the expiration of twenty years.

2. Said bonds can only be paid out of a fund expressly appropriated for that purpose by the Legislature.

3. The State interest fund created by the act of 1855 (R. C. 1855, p. 1487) and the State sinking fund created by the act of 1865 (Wagn. Stat. 1281; see also Sess. Acts 1871, p. 80), were appropriated for the payment of these among other State bonds.

4. Payment is to be made by the State commissioners created by said acts, without any further order than that contained in the acts. If there be not funds enough on hand to pay the bonds as they mature, they are required to sell such bonds as they may have purchased, so as to. raise money for that purpose.

5. Said bonds, according to their terms, are payable in gold or silver coin. And this provision contained in the bonds is not overruled by the legal-tender acts passed by Congress in 1862. And it would be a breach of the contract entered into by the State in issuing these bonds to order their payment in legal-tender notes.

PER BLISS, Judge.

1. *State bonds — Governor, authority of to contract for payment in specie.—* The State by the course of its Legislature is estopped from now disputing the authority of the governor to contract for the payment of State bonds in gold and silver.

SUPREME COURT ROOMS, JEFFERSON CITY, Jan. 23, 1872.

*To his Excellency the Governor of the State of Missouri:*

SIR: The judges of the Supreme Court have received your communication of date of January 22, 1872, addressed to them in these words:

" *To the Honorable* PHILEMON BLISS, DAVID WAGNER, WASHINGTON ADAMS,
*Judges of the Supreme Court of the State of Missouri:*

"In accordance with section 11 of article VI of the constitution of the State, I submit to your honorable body the subjoined interrogatories, premising them with the following statement:

"Certain bonds of the State, issued in aid of the Missouri Pacific and Hannibal & St. Joseph Railroads, under the act of February 22, 1851, a copy of one of which bonds is herewith submitted to your inspection, according to the stipulations expressed therein, matured on the 14th inst., and other bonds of the same series mature at different dates during the present year.

"The fund commissioners of the State, acting under the provisions of chapter 128 of Wagner's Statutes, and the acts of March 20, 1870, and March 9, 1871, having given notice of their intention and having funds in their possession in the sinking fund; duly appropriated and set apart under the acts enumerated, proceeded to make payment of the bonds maturing on the 14th inst., according to the stipulations of the bonds, as to the time of maturity and the character of the currency in which they were payable.

"Since that time, grave questions having been raised as to the propriety of their action, the validity of the bonds, and the nature of the obligation resting upon the State, I deem it a 'solemn occasion' within the meaning of section 11 of article VI of the constitution, and therefore submit to your honorable body the following questions:

"First. Under existing laws, are the fund commissioners authorized to make payment of the State debt according to the stipulations contained in the bond?

"Second. Is the State under obligation to pay those bonds, as they fall due, in gold or silver coin?

"Third. Can the State, without a breach of its contract, now order a payment of these bonds in legal-tender notes?

"I have the honor to remain, very respectfully,

"B. GRATZ BROWN."

The following is a copy of the bond accompanying the governor's communication:

"UNITED STATES OF AMERICA.

"Six per cent. Stock of the State of Missouri.

"$1,000.         BOND No. 33.         $1,000.

"Know all men by these presents, that the State of Missouri is hereby held and bound unto the Pacific Railroad Company in the sum of one thousand dollars, which the said State hereby promises to pay in gold or silver, at the Phœnix Bank, in the city of New York, to the order of said Pacific Railroad

Company, twenty years after the date hereof, with interest at the rate of six per cent. per annum from the date of the negotiation of this bond in the hands of the holder (such date to be indorsed thereon), payable semi-annually, at the Phœnix Bank, in the city of New York, viz: on the first days of January and July in each and every year, on the presentation and delivery of the interest coupons hereto severally subjoined.

"This bond is issued under authority of an act entitled 'An act to expedite the construction of the Pacific Railroad and of the Hannibal & St. Joseph Railroad,' approved February 22, 1851, a copy of which is hereto attached, and is redeemable at the pleasure of the Legislature, at any time after the expiration of twenty years from the date hereof.

"In testimony whereof, and pursuant to the authority granted by said act, the Governor of the State of Missouri has signed and the Secretary of State has countersigned these presents, and caused the great seal [L. s.] of the State of Missouri to be affixed hereto, at the city of Jefferson, in said State, this 15th day of January, A. D. 1852.

"By the Governor:                                    AUSTIN A. KING.
   "EPHRAIM B. EWING, Secretary of State.

"Registered in the office of the Auditor of Public Accounts, this 16th day of January, A. D. 1852.
                           "WILSON BROWN, Auditor of Public Accounts."

To which are attached interest coupons in the following form:

"SIX PER CENT. STOCK.

" State of Missouri.  Pacific Railroad, State Bond No. 33.  Pay the bearer thirty dollars on first day of January, 1872.
                                         " A. W. MORRISON, Treasurer."

The following indorsement is made on the bond:

"Pay the bearer, Thos. Allen, President of the Pacific Railroad Company. St. Louis, January 20, 1852."

A copy of the act entitled " An act to expedite the construction of the Pacific Railroad and of the Hannibal & St. Joseph Railroad," approved February 22, 1851, is printed on the bond.

Whilst the governor has the right to decide for himself as to whether the occasion is such as to authorize him, under section 11 of article VI of the constitution, to call on the judges of the Supreme Court for their opinion, the judges also have the same right to decide for themselves whether the occasion is such as to warrant the governor in making the call.  In this particular case there is no difference of opinion between the judges and the governor.  Without discussing the matter, we have come to the conclusion that the occasion is sufficiently " solemn, " within the meaning of the constitution, to require us to respond to the

questions propounded by the governor. I shall therefore proceed at once to give my opinion.

The first question regards the authority of the fund commissioners to make payment of the State debt, according to the stipulations contained in the bond.

I think there ought not to be any doubt as to the time when the bond became due. By the very words of the bond it is to be paid twenty years after the date thereof, and it bears date the 15th day of January, 1852. So, by the terms of the bond, it became due on the 15th of January, 1872. It is true that the act itself, authorizing the bonds to be issued, makes them redeemable at the pleasure of the Legislature, at any time after the expiration of twenty years from the date thereof; and this provision is incorporated into the bonds and appears upon their face. But it does not postpone the time of payment. It will be observed that these bonds were a loan of the credit of the State to the railroad companies, and this loan was secured by a lien on the roads. The intention was that the railroad companies should have all the time, before the bonds matured, to make provision for the payment, and that the State should not shorten this time by redeeming the bonds before their maturity, with or without the consent of the holders, and thus hasten the time of foreclosure.

The plain meaning of the bond is, that the holder has the right to present it for payment, at the Phœnix Bank in New York, twenty years after the date thereof. It is made payable then, and can be presented when due. It seems to me this is too plain for argument.

The next inquiry is, how and out of what fund are these bonds to be paid as they fall due? The State constitution (§ 6, art. XI) provides that "no money shall be drawn from the treasury but in consequence of appropriations made by law, and an accurate account of the receipts and expenditures of all public money shall be annually published." So, in like manner, under the act organizing the treasury department (Wagn. Stat. 1337, § 30), it is provided that "no warrant shall be drawn by the auditor or paid by the treasurer unless the money has been previously appropriated by law; nor shall the whole amount drawn for or paid under

any one head ever exceed the amount appropriated by law for that purpose."

The next question is, has there been any fund appropriated by the Legislature for the payment of these bonds? for without such appropriation, under the constitution and the statute law referred to, payment could not be legally made.

In 1855 the Legislature passed an act constituting a fund to be denominated "the State interest fund." (See R. C. 1855, p. 1487.) By section 3 of that act, the treasurer and the auditor of public accounts, and their successors in office, were created commissioners of this fund, to have exclusive control, custody and care of the same. By section 6, the fund so created was declared to be sacred and inviolable for the purpose contemplated by the act; and the general assembly pledged the public faith for the State of Missouri that this fund should not be diverted or applied to any other purpose whatsoever, until the principal and interest of all the State bonds issued and to be issued or guaranteed, under existing acts, should be fully paid and redeemed in good faith.

Afterward, in the revision of 1865-6 (see Wagn. Stat. 1281), the State interest fund is appropriated and set apart in the same way, and by section 3 the general assembly again pledges the public faith of the State of Missouri that the fund so created should not be diverted or applied to any other purpose whatsoever, until the principal and interest of all the State bonds constituting the consolidated railroad indebtedness of the State of Missouri should be fully paid and redeemed in good faith. By section 2 of the last-named act, the State treasurer and the State auditor are created commissioners of the State interest fund, to have the exclusive control, custody and care of the same. Section 4 requires them to pay the interest on the bonds as it becomes due. By section 9 of the same act (Wagn. Stat. 1282) it is provided that "whenever there is any surplus in the State interest fund, such sums shall be set apart and be credited to the sinking fund, for the payment of the obligations of the State that may hereafter become due, and for no other purpose whatever." Section 10 provides that the "commissioners of the State interest fund shall be ex-officio commissioners of the sinking fund."

In March 9, 1871, the Legislature passed an act entitled " An act regulating the State sinking fund." (See Sess. Acts 1871, p. 80.) The first section provides " that the commissioners of the State interest fund shall be *ex-officio* commissioners of the sinking fund."

Section 2 provides that " whenever there is any surplus, or, at any time before the first day of January or July, more money than necessary to meet the interest falling due in the State interest fund, such sums shall be set apart and credited to the sinking fund; and also all sums of money in the revenue fund remaining unappropriated at any time, shall immediately be transferred by the State auditor to the sinking fund, to be applied in the purchase of bonds of the State of Missouri, as hereinafter provided."

Section 3 provides for the purchase of the State bonds (the Hannibal & St. Joseph excepted) whenever there is money enough to purchase one or more of the bonds, provided the commissioners shall in no case purchase bonds at a price above their par value.

Section 4 provides that " all bonds purchased under the provisions of this act may be deposited with the National Bank of Commerce of the city of New York, or some other responsible bank of that city, subject to the order of the fund commissioners. The interest shall be collected and proceeds placed to the credit of the sinking fund until such bonds are due. The commissioners are hereby authorized, if by them deemed to be for the best interest of the State, to exchange long bonds for the shortest series, or may sell the same again at the highest market value, whenever there is not sufficient money in the interest fund to meet any of the bonds of the State falling due."

Now, under the foregoing provision of our statutes, commencing as early as 1855, a fund was created and set apart for the payment of the principal and interest of the State bonds. Afterward, in 1865–6, the Legislature created a sinking fund in connection with the State interest fund, and by the very terms of the act set apart and appropriated this fund for the payment of the State bonds as they should fall due. The faith of the State was pledged that this fund should not be touched for any other purpose. It was placed in the custody and exclusive

control of the commissioners of the State interest fund, who, by the law, were declared to be *ex-officio* commissioners of the sinking fund.

From all these laws, taken in connection, it is manifest that these two funds were appropriated to the payment of our State bonds, interest and principal, as they should fall due.

Whose duty is it to pay the bonds as they fall due? The exclusive custody and control of these funds are with the commissioners, and the law requires that the bonds shall be paid as they mature.

If these were private funds put in the hands of a trustee by an individual to meet certain debts he owed, as they became due, can there be any doubt that it would be the manifest duty of such trustee to pay such debts without any further order from the debtor? Is there any material distinction in this regard between a private and a public trust? But the duty of the commissioners so to apply the funds in the payment of the State bonds, if not expressly declared, is necessarily implied from the statutes referred to.

Section 4 of the act of 1871 clearly indicates this to be their duty. By this section, if there be not enough of funds on hand to pay the maturing bonds, they are required to sell such bonds as they may have purchased, so as to raise money to meet any of the bonds of the State falling due. When this money is thus raised, who is to meet the bonds? The only proper answer is that the fund commissioners must do so, as they have the exclusive control of the fund which by law has been appropriated to this end.

In my opinion, therefore, the first question propounded to us must be answered in the affirmative.

The second question is easy of solution. The bonds on their face are payable in gold or silver at maturity. It was the duty of the governor who issued these bonds to specify in the bonds what kind of currency they were to be paid in.

By the act of 1851 authorizing the issue, the bonds were to be for not exceeding one thousand dollars each, to be signed by the governor and countersigned by the secretary of State, and

sealed with the great seal of the State, and registered in the office of the auditor of public accounts.

In issuing these bonds the governor had to comply with the provisions of the act entitled "An act respecting the issue of State bonds," approved February 13, 1841. (See Sess. Acts 1841, p. 19.)

The second section of this act provides that the registry of the bonds "shall be made in a well-bound book, and shall express the number of the bond, its date, amount, where payable, when payable, in what currency, on what account, and under what act of the assembly issued." The necessary implication from this section is that the bonds must express on their face in what currency they are to be paid. The governor was not restricted as to the kind of currency, except that the law of 1851 required them to be issued for dollars, and at that day the only dollars we had were gold and silver, and the term "dollars" at that time meant coined money, not the promises of a bank to pay money, and contracts calling for dollars without specifying the kind of dollars were construed to mean gold or silver coin; but as contracts might also specify paper dollars, or rather bank promises to pay dollars, it was deemed best that our bonds should specifically name the kind of money; so the governor, under the law, defined in the bonds themselves the kind of dollars to be paid, and he not only had the power, but it was his manifest duty to do so. As these bonds on their face were made payable in gold or silver, is it not the duty of the State so to pay them? Is this provision in the bonds overruled or nullified by the legal-tender acts passed by Congress in 1862?

I do not understand that the courts have gone to the extent of overriding this express provision in the bond itself, by the construction they have put on the legal-tender law of Congress. A bond expressing on its face to be paid in gold or silver, in my opinion, must be paid in that kind of currency. The State can only discharge the obligations it is under by paying these bonds in gold or silver coin at maturity. They cannot be paid in legal tender against the consent of the holder. It is not so "nominated in the bond."

My opinion, therefore, is that the second question propounded to us must be answered in the affirmative.

The third question propounded to us must, in my opinion, be answered in the negative. Of course, if the State is bound to pay in gold or silver coin, it would be a breach of its contract to order a payment of these bonds in legal-tender notes. As these notes are not equal to gold or silver, the payment in them at par would leave a part of the debt still unpaid, and to compel the creditors to take them at par would essentially impair the obligation of the contract.

I have the honor to remain, very respectfully,

WASH. ADAMS.

JEFFERSON CITY, January 23, 1872.

*To the Governor of the State of Missouri:*

In reply to the questions embraced in your communication of the 22d inst., I have to say that Judge Adams has shown me his answer, which discusses the subject in full, and that I concur in his opinion. I have, however, doubts upon the subject-matter of the first question. It is unfortunate that the Legislature should leave a matter of such importance in any doubt whatever, and that the authority should not be direct and express. The authority, however, to pay the bonds as they fall due, is, I think, a fair implication from the several acts.

One or two facts in addition to the suggestions of Judge Adams, upon the subject-matter of the second and third questions, have a controlling weight in my mind.

The legal liability of the State upon these bonds I consider as settled by the Supreme Court of the United States in Bronson v. Rhodes, 7 Wall. 229, where it was held that a bond expressly payable in gold and silver coin cannot be discharged by a tender of legal-tender notes. I do not understand that the recent decision in regard to the scope of the legal-tender act changes this ruling, and it being a construction of a statute of the United States, we are bound by the interpretation given it by the Federal courts.

In regard to the authority of the governor to contract for the payment of the bonds in gold and silver, if originally there was

any doubt, the State should be estopped from now disputing it. The State has legislated in regard to these bonds over and over again, and it has always acknowledged them as lawful and obligatory, pledging the faith of the State to their payment, without a word of dissent as to their terms. The various purchasers, then, had a right to consider them as having been ratified in all their provisions. As between private parties, such ratification of the acts of an agent would effectually estop the principal from alleging that he had exceeded his authority, and it seems to me too late now for the State to make such a plea.

> P. BLISS, Judge.