## DISTRICT ATTORNEYS.

IN THE MATTER OF THE CONSTITUTIONALITY OF SENATE BILL NO. 65.

1. CONSTITUTIONAL AMENDMENT RELATING TO LEGISLATIVE AND EXECUTIVE QUESTIONS TO SUPREME COURT CONSTRUED.— The constitutional amendment requiring the supreme court to answer questions propounded by the governor or by either branch of the legislature is an enlargement of the original jurisdiction previously conferred upon that court by the constitution.

2. The answers by the court to such questions are reported as are other opinions, and have the force and effect of judicial precedents; differing in this respect from the few analogous provisions elsewhere adopted.

3. While the legislature or governor is first to determine the sufficiency of the importance and the degree of the solemnity justifying a given question, the court may judge of these matters for itself.

4. Questions relating to the desirability or policy of proposed legislation cannot be propounded.

5. The attorney-general is the legal adviser of the executive and legislative departments, and, except in the rarest instances, this officer should be consulted and not the court.

6. To avoid grave injustice and abuse the most extraordinary caution and conservatism should be exercised in propounding and in answering such questions.

7. These questions, when by the executive, must relate to matters exclusively *juris publici;* when propounded by a branch of the legislature, they must be connected with pending legislation and relate either to the constitutionality thereof or to matters connected therewith of purely public right.

8. The question whether a bill proposing to increase the fees of district attorneys throughout the state will apply to district attorneys now in office does not come within the rule announced.

THE resolution and question submitted to the court read as follows: "Whereas, senate bill No. 65 proposes to materially increase the fees and emoluments of the several district attorneys in the state: Therefore be it resolved, that the supreme court be requested to answer the following question: Will the provisions of senate bill

No. 65 apply to the district attorneys now in office?"
The constitutional amendment adopted in the fall of
1886, and construed in the opinion of the court, reads:
"The supreme court shall give its opinion upon impor-
tant questions upon solemn occasions, when required by
the governor, the senate or the house of representatives;
and all such opinions shall be published in connection
with the reported decisions of the court." Amendment
to sec. 3, art. 6, Const.

CHIEF JUSTICE HELM delivered the opinion of the court.

The framers of our constitution specified the juris-
diction to be exercised by this court. They declared
that, with certain designated exceptions, this jurisdiction
should be purely appellate and supervisory. A few writs
and proceeding were named in connection with which
the court was clothed with original jurisdiction. Sec. 3,
art. 6.

The section mentioned has been construed by this court
as applying only to cases where questions *publici juris*
are raised, thus excluding from this branch of its juris-
diction all controversies wherein private rights alone are
involved. *Wheeler v. Irrigation Co.* 9 Colo. 248. The
reasons for this construction are obvious and potent.
They are considered in the opinion referred to, and will
not here be restated. The provision authorizing legisla-
tive and executive questions was not originally a part of
the constitution. It has been in effect less than three
years. It is an enlargement of the original jurisdiction
of the court conferred by said section 3 of the judiciary
article. It adds to the list of writs there specified an
unique and important proceeding,— unique because, as
we shall presently see, it is devoid of nearly all the usual
*indicia* of judicial proceedings; important because of its
consequences.

All of the reasons relied upon for confining the writs
specified in section 3 of article 6 to questions *publici juris*

apply with even greater force to the novel proceeding authorized by the provision before us; for, while this proceeding is original, and in that respect similar to the other original proceedings referred to, yet it possesses characteristics peculiar to itself. Not only should its operation be confined to questions *publici juris*, but, as we shall endeavor to show, even questions of this character should rarely be thus presented or considered. It will be observed that the authority conferred is accompanied by an express limitation. While the question must be one relating to purely public rights, it can only be propounded upon solemn occasions, and it must possess a peculiar or inherent importance not belonging to all questions of the kind. It is impossible to state any absolute rule by which the sufficiency of this importance and the degree of this solemnity can be determined. These are matters that rest largely in the discretion of both the legislature and court; for, while the legislature is first to judge of the relative importance and solemnity justifying a given question, it has been held that the justices have also a voice in deciding whether jurisdiction should be entertained. *Opinion of the Justices,* 49 Mo. 216. The court will seldom question the action of the legislature in this respect, but the right so to do should not be denied. It is submitted, however, that, for reasons hereinafter stated, the greatest caution should be employed, both by the legislature and court, in exercising the discretion just mentioned.

As already suggested, there are peculiar reasons for excluding from the purview of the provision before us legislative and executive questions affecting private or corporate rights — reasons not applicable in the exercise of the original jurisdiction of the court in connection with the other original writs or proceedings provided for.

Only five states of the entire Union have ventured to adopt and retain constitutional provisions in any way analogous to this constitutional amendment. At one time

there existed in Missouri a provision somewhat similar, but the framers of the Missouri constitution of 1875, profiting, we suppose, by experience, excluded the same therefrom, and we are not aware that any effort has since been made looking to its restoration. But Colorado has gone further than the states referred to, in this doubtful and perilous experiment, by adding two peculiar features, one of which at least seriously increases the danger. By the express words of the corresponding provisions in each of the other states the questions are limited to questions of law, and the justices, not the court, are to respond. These officers appear to be merely legal advisers, occupying much the same relation in this regard to their respective general assemblies as does the attorney-general of Colorado to the state legislature. Their written responses, when questioned, are not always published in the reports. They are not pronounced by the court, and hence are not technically judicial decisions, nor do they necessarily constitute judicial precedents. In this state, on the other hand, the interrogatories are not expressly limited to questions of law, and it is the court, not the justices, that must answer. For obvious reasons, we hold that the intent could not have been to authorize questions of fact; but our responses must be reported as are other opinions, and they have all the force and effect of judicial precedents.

It is a principle declared by our constitution (sec. 25, art. 2), and of universal recognition, that no person shall be deprived of life, liberty or property without due process of law. But there cannot be due process of law unless the party to be affected has his day in court. Yet a careless construction and application of this constitutional provision might lead to the *ex parte* adjudication of private rights by means of a legislative or executive question, without giving the party interested a day or voice in court.

When this tribunal exercises its original jurisdiction by

entertaining any of the other proceedings specified in the constitution, process must issue, the parties to be affected must have notice, and they must be given an opportunity to appear and be heard, both in person and by counsel; so that, even though the primary and principal purpose of the proceeding be to adjudicate a matter *publici juris*, yet there is a compliance with the fundamental requirement relating to due process of law. This consideration greatly reinforces the proposition that it could not have been the purpose of those who framed the amendment to permit such *ex parte* adjudications by means of executive or legislative questions. We have no hesitancy in re-affirming what we have already declared, that "parties must still adjudicate their rights in the ordinary and regular course of judicial proceedings." 9 Colo. 621.

Nor could it have been the intention of the authors of this amendment to permit the presentation of questions relating to the policy of proposed legislation. A proper regard for the constitutional arrangement of the different departments of government, and the constitutional powers and duties devolved upon each department, forbids the conclusion that this court can have anything to do with such matters. It is clearly not authorized to give its advice upon any question of fact or of policy. It is the peculiar and exclusive province of the legislature, so far at least as the judiciary is concerned, to judge of the necessity or desirability from a political or economic stand-point of each and every act proposed.

The history of this constitutional amendment may be consulted with advantage in the endeavor to discover its purpose. The successive legislatures meeting after the admission of Colorado to statehood encountered great difficulty in the enactment of laws on account of numerous wise but troublesome limitations contained in the constitution. Perplexity and confusion arose in consequence of legislation which this court was ultimately compelled to hold invalid. It was deemed expedient that

each house should have the privilege of submitting questions, so that the injurious consequences arising from unconstitutional legislation might be avoided by having the validity of proposed legislative acts thus determined in advance.

Corroborating the conclusion that the foregoing was the primary and principal purpose of the amendment, we have the contemporaneous construction of the legislature. All the questions propounded by the general assembly of 1887, which was the first to meet after the adoption of the amendment in question, rested upon legislative doubts as to the constitutionality of certain proposed acts or parts of acts. This consideration is peculiarly significant, because it tends strongly to show the view entertained by the legislative representatives of the people chosen at the same election at which the amendment itself was adopted. It must be presumed that these representatives comprehended, and by their action expressed, the understanding of the people in relation thereto.

Upon mature investigation and reflection we are of the opinion that executive questions must be exclusively *juris publici*, and that legislative questions must be connected with pending legislation, and relate either to the constitutionality thereof or to matters connected therewith of purely public right. We believe that the accuracy as well as the wisdom of this interpretation will commend themselves alike to the legislative judgment and the legal mind.

But even with this construction there is danger of grave abuses. Efforts will still be made by private parties to anticipate judicial rulings in the ordinary course of litigation by inducing the submission and decision of questions ostensibly *publici juris*. We feel constrained to repeat and emphasize the thought heretofore expressed, that the utmost vigilance and caution be exercised by both the general assembly and the court in acting under this novel constitutional authority. There cannot well

be too much moderation in the premises.   We note that, in those states which permit consultation with the justices, the privilege seems to be less often invoked than it has been here.   The attorney-general is the natural as well as the statutory legal adviser of the executive and legislative departments.   His counsel should be solicited; and only as a *dernier ressort*, upon the most important questions and the most solemn occasions, should the court be requested to act.

It must always be remembered that we are compelled to discharge the duties of both court and counsel; that the exigencies, which of necessity require speedy answers, render it impossible to bestow upon these questions the research and deliberation usually given to judicial proceedings by courts of last resort; and that for these reasons our embarrassment is seriously enhanced, while the possibility of erroneous decisions is of course augmented.   Although no questions be propounded or answered save those which relate to the constitutionality of legislation, or to 'other matters purely and exclusively *publici juris*, and although there be no causes pending in the courts that are directly affected, and no apparent rights or interests of private parties directly involved, yet it is obvious that a false interpretation by us of a constitutional provision, or a mistaken opinion upon a question purely *publici juris*, may indirectly lead to the most grievous consequences.

The question presented in this case suggests, neither through the preamble nor the resolution, any matter of constitutional difficulty; nor is it such a matter otherwise *publici juris* as would warrant our entertaining jurisdiction upon that ground.   It does not even, so far as we can perceive, relate to the action of either branch of the general assembly upon the bill mentioned.   We are asked to construe the future effect of the proposed bill in its application to the fees of certain public officers. The matters specified are proper subjects for judicial ac-

tion, and will doubtless be litigated through ordinary judicial proceedings.

This court has always conscientiously endeavored to observe the requirements of all constitutional provisions, including the one now under consideration; and it will in the future, as in the past, ever take pleasure in rendering such assistance to the executive and to each house of the legislature as shall be consistent with its position as a separate and independent branch of the government, and also in harmony with what is deemed a sound exposition of the constitution.

But in view of the foregoing considerations, were the general assembly still in session, we would respectfully ask that the question be recalled.