37   425
46   629

## In re Board of Public Lands and Buildings, and Board of Purchase and Supplies.

### Filed June 30, 1893.   No. 6306.

**Statutes:** Repeal by Implication: Board of Public Lands and Buildings. The title of the act of February 15, 1877, "to regulate the purchase of supplies for the public institutions and executive offices of the state," is not broad enough to include a repeal by implication of the provisions of the act of February 13, 1877, for the auditing by the board of public lands and buildings of accounts for money disbursed for the support of the public institutions of the state. Norval J., dissenting.

Questions submitted to the supreme court by the board of public lands and buildings.

Maxwell, Ch. J.

The board of public lands and buildings has submitted to this court certain questions relating to a seeming conflict in the statutes relating to their duties and those of the board of purchase and supplies. After referring to and setting out portions of the statutes in question, they submit the following:

"1. What bills, if any, do the board of purchase and supplies examine and approve?

"2. What bills, if any, do the board of public lands and buildings examine and approve under the existing laws of this state?

"3. Does the act of 1877 (Laws of 1877, p. 199), creating a board of purchase and supplies, supersede the act of 1877 (Laws of 1877, p. 188), establishing a board of public lands and buildings and defining their duties, in so far as the latter act provides that the board of public lands and buildings shall examine and approve the account of the various state institutions therein mentioned?"

Section 19, article 5, of the constitution provides: "The commissioner of public lands and buildings, the secretary of state, treasurer, and attorney general shall form a board which shall have general supervision and control of all the buildings, grounds, and lands of the state, the state prison, asylums, and all other institutions thereof, except those for educational purposes, and shall perform such duties and be subject to such rules and regulations as may be prescribed by law."

In 1877 the legislature passed an act creating the board of public lands and buildings. The powers of the board as declared in that act are as follows:

"Section 1. That the board created by section 19 of article 5 of the constitution of the state of Nebraska, consisting of the commissioner of public lands and buildings, the secretary of state, treasurer, and attorney general of the state, shall hereafter be known in law as 'the board of public lands and buildings of the state of Nebraska,' and shall have general supervision and control of all the public lands, lots, and grounds, and all institutions, buildings, and the grounds thereto, now owned, or that may hereafter be acquired, by the state, including the saline lands, together with all salt springs, the penitentiary lands, internal improvement lands and lots, as well as the state capitol building and grounds, the state penitentiary and grounds, the state hospital for the insane and grounds, the asylum for the deaf and dumb and grounds, the asylum for the blind and grounds, and all other lands, lots, grounds, and buildings now belonging or hereafter acquired by the state; *Provided, however,* That all lands, lots, grounds, and buildings, or institutions set aside for and devoted to educational purposes, be and hereby are excepted from the provisions of this act.

"Sec. 2. The board of public lands and buildings shall have the power to make general direction, according to law, for the sale, leasing, or other disposition of the lands, lots,

and grounds belonging to the state as aforesaid, and shall give warrant by their proceedings as such board to the commissioner of public lands and buildings for his action in the sale or leasing of such lands, lots, and grounds, and shall require of the said commissioner a full and detailed report of all such sales, leases, and the funds thereby acquired, as hereinafter directed.

"Sec. 3. The board shall have general custody and charge of all buildings and institutions and the grounds thereto coming under the provisions of this act, and shall be responsible for the proper keeping and repair of the same, and shall require from the commissioner of public lands and buildings, who shall be direct custodian of such institutions, buildings, and grounds, a report, at least once in every three months, as to the condition of the same; *Provided*, That no additions shall be made to any public buildings without special appropriation of the legislature.

"Sec. 4. The said board shall have power, under the restrictions of this act, to direct the general management of all the said institutions and be responsible for the proper disbursement of the funds appropriated for their maintenance, and shall have reviewing power over the acts of the officers of such institutions, and shall, on the part of the state, at regular meetings as hereinafter directed, audit all accounts of such officers, including the accounts of the commissioner of public lands and buildings, except his salary.

"Sec. 5. At the regular meeting of the board it shall be their duty to examine the accounts of the public officers contemplated in this act and to determine whether the same are entitled to be paid out of the moneys appropriated for the purpose of maintaining the institutions for which they are charged, and, if correct, shall approve the same, which approval shall be signed by the president and countersigned by the secretary under date of such action, and if the accounts be incorrect, exorbitant, or not entitled to payment from such appropriations, the same shall be dis-

approved and returned to the claimant, such board keeping a record of the same.

"Sec. 6. When the accounts above mentioned have been filed with the board, and shall have been audited and approved by them, the auditor of public accounts is hereby authorized and directed, upon the presentation to him of such accounts so authenticated, to issue his warrant on the treasurer against the proper fund or appropriation, for the amount therein stated, to the claimant or his assignee. And no accounts coming under the provisions of this act shall be entitled to payment until they have been so approved by the said board.

"Sec. 7. It shall be the duty of the board to take cognizance of all charges or complaints made against the said public officers, and at a regular meeting, to give an impartial hearing to such charges, and the defense against them, if any, and report the charges, evidence, and their conclusions in the matter, to the governor, within six days after the determination of such investigation.

"Sec. 8. The said board shall meet at least once in each month, on the first Monday thereof, for the transaction of business; the commissioner of public lands and buildings shall be *ex-officio* president of the board, and shall preside at all meetings and execute all other duties prescribed for him in this act, and shall sign all papers and instruments or documents that shall be approved, made, or directed by the board.

"Sec. 9. The secretary of state shall be *ex-officio* secretary of the board, and shall keep a careful record of all the proceedings of the board in a substantial and well bound book, to be kept for that purpose, and which shall be known as the 'Record of the proceedings of the board of public lands and buildings of the state of Nebraska,' and the said secretary shall countersign all papers, instruments, or documents approved, made, or directed by the board.

"Sec. 10. It shall be necessary for at least three members of said board to be present at any meeting for the transaction of business, and in absence of the president, or secretary, the place shall be filled by election, *pro tempore; Provided,* That no meeting for business shall be held without the presence of one or the other of them.

"Sec. 11. The president shall have the power to call the board together in special meeting, if in his judgment the public good requires the same to be done for any purpose contemplated in this act; and such call shall be by written notice, stating the purpose of meeting, which notice shall be delivered to each member of the board."

This act was passed and took effect February 13, 1877. Two days thereafter the legislature passed "An act to regulate the purchase of supplies for the public institutions, and the executive departments of the state." The act is as follows:

"Section 1. That all purchases and contracts for supplies for any of the departments and public institutions of the state, where the public exigencies do not require the immediate delivery of the articles, shall be by advertising a sufficient time previously for proposals for supplying the same.

"Sec. 2. At least one month previous to the first day of January, April, July, and October, respectively in each year, a board consisting of the governor, commissioner of public lands and buildings, secretary of state, treasurer, and attorney general, shall meet with the warden of the state prison, and the superintendent of each of the asylums or other institutions furnished by the state, and determine the supplies that may be necessary for three months, except articles as may be perishable and cannot be kept. Said board shall designate clearly the quantity and quality of the articles, and shall then advertise for ten days in some newspaper published at the capital, having general circulation in the state, before the first day of January, April,

July, and October respectively, for proposals for furnishing said articles, and for each institution separately, to be delivered at the institution within ten days after the first day of the months aforesaid; *Provided,* That the board may permit the delivery of the goods monthly, if in their judgment it be deemed best. And the bids which propose to furnish the supplies for either institution at the lowest rate shall. be received for such institution; *Provided further,* That no proposal shall be considered by said board unless the same is accompanied by a bond with such security as the board shall determine, with condition to furnish said articles as proposed in said bid.

"Sec. 3. All supplies for such institutions,. not purchased as provided by this act, shall be purchased in such manner as shall be directed by said board by written instruction.

"Sec. 4. The head of each of the executive departments respectively shall advertise for proposals for supplying the departments in accordance with the provisions of this act.

"Sec. 5. All vouchers for supplies having been examined and approved by said board or the head of the department, as the case may be, shall be approved by the secretary of state, and thereupon the auditor of state shall draw his warrant upon the treasurer for the amount."

It will be observed that the title of the act is not to create a board to purchase supplies but to regulate the purchase. This is to be done by public advertisement for ten days before the first day of January, April, July, and October in each year. The board is required to designate clearly the quantity and quality of the articles desired, that is, the different articles desired shall be specified and described in such a manner that all bidders will know just what is intended. In many respects the same rules apply as in the letting of contracts for supplies for a county.

In *State v. York County,* 13 Neb., 65, in speaking of

advertisements for supplies, it is said: "These propositions should distinctly specify the kind and quality desired, and if possible the commissioners should provide samples as a basis on which to make the bids, so that all be made on the same basis.   The object of the law is to invite competition and prevent favoritism and fraud." That language is quoted with approval in *State v. Saline County*, 19 Neb., 252, and is applicable in the case at bar.

The utmost publicity possible should be given of the proposed purchase so that competition may be invited.   It is not intended that any goods shall be purchased at private sale except in case of emergency and which will not arise once in a thousand times.   The fifth section provides that all vouchers for supplies having been examined and approved by the board or the head of the department, as the case may be, shall be approved by the secretary of state; that is, the board may examine the vouchers and approve the same, but it is not essential that it should do so.   It is sufficient if the head of the particular department certify to their correctness. Nor do these provisions supersede the provisions of the act, creating the board of public lands and buildings, in which it is the duty of that board to examine the accounts of the public officers, and makes the board responsible for the proper disbursements of the funds, etc.   It will be seen from the title that it does not purport to supersede the act which took effect February 13, 1877.   That remains in full force, but the act of the 15th of the same month regulates the mode of purchase of supplies.   There is no conflict between the acts and both may stand. It is unnecessary in this connection to refer to the rule that to justify a repeal by implication there must be such a repugnancy between the acts that both cannot stand, therefore the latest act will supersede the former.   That rule, however, is not applicable here.   The board of purchase and supplies need not approve the ·vouchers for supplies, but the board of public lands and buildings must do so before a warrant can

be drawn in favor of the persons holding such vouchers, and the act of February 15 does not supersede that of February 13, 1877.

POST, J., concurs.

NORVAL, J., dissenting.

I dissent from the decision of my associates on the ground that this court has no jurisdiction to pronounce the same. The constitution divides the powers of the state government into three distinct departments, the legislative, executive, and judicial, and defines the powers and duties of each. Section 2 of article 6 of the state constitution reads as follows:

"Sec. 2. The supreme court shall consist of three judges, a majority of whom shall be necessary to form a quorum or to pronounce a decision. It shall have original jurisdiction in cases relating to revenue, civil cases in which the state shall be a party, *mandamus, quo warranto, habeas corpus,* and such appellate jurisdiction as may be provided by law."

It is to the quoted section above that we must look for the jurisdiction of the supreme court. There is no other provision of the constitution relating to the subject. In *Miller v. Wheeler,* 33 Neb., 765, it was held that the legislature has no power to increase the original jurisdiction of this court conferred by the constitution. That was an action brought in this court under the statute, to contest the office of district judge. The present chief justice, in delivering the opinion of the court, says: "A more careful examination of the statute and the constitution, however, convinces the writer that the original jurisdiction of the supreme court is confined to the cases specified in the constitution, and that under another name no additional jurisdiction can be conferred. This is a court, the primary object of which is to review cases tried in the district courts. It is an ap-

pellate tribunal and is given original jurisdiction in a few limited cases, most of which are extraordinary remedies for the purpose of preventing a failure of justice."

It is plain that the section of the constitution to which reference has been made confers no jurisdiction upon the supreme court to answer queries submitted by either the legislature or the officers of the executive department of the state government, and no such duty is imposed upon the court of last resort by any other provision of the constitution or by legislative enactment. It is the duty of the court, in a litigated case, where the question arises, to construe a statute, or determine whether a law is constitutional or not; but it is proper to do so only in the determination of a real controversy between individuals in a proper action brought for that purpose. Courts should refrain from construing a statute or passing upon its constitutionality in advance of actual litigation, for the obvious reason that the parties who may be interested are not before the court, and the decision would not be binding upon them. Here, upon an *ex parte* proceeding, without the assistance of either a brief or oral argument, we are asked to pass upon important questions. To undertake to answer such questions we must act both as court and counsel.

But seven of the states of the Union contain constitutional provisions making it the duty of the supreme court to act as the legal adviser of the executive and legislative departments of the state government. The constitution of Colorado declares that "the supreme court shall give its opinion upon important questions upon solemn occasions when required by the governor, the senate, or the house of representatives; and all such opinions shall be published in connection with the reported decisions of the court." The legislature of that state submitted to the supreme court whether a bill proposing to increase the fees of district attorneys, then pending before the legislature, would apply to the district attorneys then in office. The court in *Re Con-*

31

*stitutionality of Senate Bill No. 65,* 12 Col., 466, decided
that the constitutional provision of that state above quoted
applies solely to cases involving questions of public right,
and that such questions should rarely be thus presented or
considered. It was held that the question submitted in
that case was not one requiring in advance the opinion
of the court, and it declined to answer the same. Chief
Justice Helm in the opinion says: "It is a principle de-
clared by our constitution (section 25, article 2) and of uni-
versal recognition, that no person shall be deprived of
life, liberty, or property without due process of law; but
there cannot be due process of law unless the party to
be affected has his day in court. Yet a careless con-
struction and application of this constitutional provis-
ion might lead to the *ex parte* adjudication of private rights
by means of a legislative or executive question, without
giving the party interested a day or voice in court. When
this tribunal exercises its original jurisdiction by enter-
taining any of the other proceedings specified in the con-
stitution, process must issue, the parties to be affected
must have notice, and they must be given an opportunity
to appear and be heard both in person and by counsel, so
that, even though the primary and principal purpose of
the proceeding be to adjudicate a matter *publici juris,* yet
there is a compliance with the fundamental requirement
relating to due process of law. This consideration greatly
re-inforces the proposition that it could not have been the
purpose of those who framed the amendment to permit
such *ex parte* adjudications in legislative questions. We
have no hesitancy in re-affirming what we have already
declared, that 'parties must still adjudicate in the ordi-
nary and regular course of judicial proceedings.'" (See
*In re Senate Resolution on Irrigation,* 9 Col., 620; *In re
Construction of Constitution,* 54 N. W. Rep. [S. Dak.],
650; *Opinion of the Justices,* 21 N. E. Rep. [Mass.], 439;
*Opinion of the Justices,* 24 N. E. Rep. [Mass.], 1086;
*Opinion of the Court,* 49 Mo., 216.)

In Nebraska the attorney general, and not the supreme court, is the legal adviser of the executive and legislative departments. We are aware that this court has, in some instances, assumed to answer questions submitted by the other branches of the state government, although but twice since the writer has been a member of the court, and then I, with much reluctance, assented. This court is now burdened with business. The number of suits annually brought to this court had so increased that the last legislature created a supreme court commission to assist in the disposal of the numerous cases on the docket, and it seems to me, in justice to the litigants who have actions pending, it is time for the court to call a halt, and entertain jurisdiction solely in causes where the same is conferred by the constitution. The courts of last resort of most of the states decline to take jurisdiction in a proceeding like this, and a different practice prevails almost alone in the few states having a constitutional provision similar to that of the state of Colorado.

Entertaining this view upon the subject of jurisdiction, it would be improper for me at this time to express an opinion upon the questions propounded by the board of public lands and buildings, although I would willingly do so were the matters before the court in a legal manner.