## IN RE PENITENTIARY COMMISSIONERS.

1. EXECUTIVE QUESTIONS.
Any question submitted by the governor to this court for its opinion, is entitled to respectful consideration; but the court must determine for itself as to the importance of the question, the solemnity of the occasion, and the nature of the answer proper to be returned under the particular circumstances of each case.

2. EX PARTE OPINION.
This court should not give an *ex parte* opinion in relation to a controversy that has already arisen, especially if actual litigation involving private rights is likely to arise from such controversy.

*Original Proceeding.*

THE opinion of the court is in response to the following communication and question from the governor:

"To the Honorable, the Supreme Court of the State of Colorado.

"*Sirs*: A question of serious import has arisen in the executive department of the state, upon the following facts:

"The seventh general assembly, April 19, 1889, passed an act to establish the Colorado State Reformatory, which was afterwards established at Buena Vista.

"The question of serious import referred to, arises wholly from the different manner in which the act to establish the state reformatory (Laws 1889, commencing page 418) is construed by the state executive and by the penitentiary commissioners, in reference to the paroling of prisoners transferred from the state penitentiary to the state reformatory.

"There is no intention on the part of the executive to question the right of the board of commissioners, to make requisition upon the warden of the state penitentiary, to transfer convicts in the penitentiary to the state reformatory for education and treatment, and that while confined in the reformatory such transferred convicts should be subject to the rules and regulations of the reformatory, but in the opinion of the executive, prisoners so transferred should be detained in the reformatory during ' the term of their sentence at the state penitentiary,' as is provided in § 24 of the Reformatory Act, and subject also to the penitentiary rules as to the commutation of time of imprisonment.

"The penitentiary commissioners maintain, notwithstanding the provision in § 24 referred to, that convicts thus transferred, become so subject to the rules and regulations of the reformatory, that the board of commissioners may exercise the same powers as to the absolute release of such transferred convicts from imprisonment as is provided in §§ 25 and 26 of the Reformatory Act. This view of the board of commissioners is fully sustained by an opinion of Att'y Gen. Maupin, a copy of which opinion is hereto attached. Such a construction of the law seems to the executive unwarranted by the terms of the Reformatory Act, and the past and present policy of the board of commissioners in paroling convicts

transferred from the penitentiary to be an unconstitutional invasion of the prerogative of the governor of the state in relation to reprieves, commutations and pardons of criminals after conviction, and therefore

"I certify that the question submitted is important, and arises upon a solemn occasion, wherein I, as the executive of the State of Colorado, in defense of the prerogatives which appertain to my office, and to prevent further violations of the constitution and laws in this respect by the board of penitentiary commissioners, require the opinion of the supreme court. I respectfully request the opinion of the honorable supreme court in answer to the following question:

"Are the board of penitentiary commissioners in paroling convicts transferred from the penitentiary to the state reformatory obliged to comply with the requirements of § 24, of the Reformatory Act, and detain such convicts in the reformatory during the term of their sentence at the state penitentiary, less commutation according to penitentiary rules?

"Very respectfully yours,

"Davis H. Waite."

"State of Colorado—Attorney General's Office.
"Denver, Colo., June 3, 1891.

"Hon. William A. Smith, Warden Colorado State Penitentiary, Canon City, Colorado.

"*Dear Sir :* I beg leave to acknowledge receipt of your letter of May 31st, wherein you request an opinion from me as to whether or not the commissioners have authority, under the law relating to the state reformatory, to parole any prisoners who are now inmates of that institution.

"Upon the careful examination of the act creating the state reformatory, I find that section 24 of the act authorizes the commissioners to make requisition upon the warden of the state penitentiary, who shall thereupon select from among the convicts of the state penitentiary who are well behaved and most promising the number required by the commissioners, and transfer them to the reformatory for education and treat-

ment ' under the rules and regulations thereof.' Section 23 of the same act provides that ' said commissioners shall also have power to establish rules and regulations under which prisoners in the reformatory may be allowed to go upon parol outside the reformatory buildings and inclosure, but so remaining while on parol in the legal custody and under the control of the board of commissioners, subject at any time to be taken back within the inclosure of such reformatory.

" There is nothing in this language last quoted above which indicates that the rules and regulations relating to the parol of prisoners shall be applicable to those inmates of the reformatory who may be sentenced thereto by the courts.

" On the contrary I infer from this language that these rules and regulations should apply to *all* prisoners in the reformatory, regardless of the question as to whether they have been sentenced thereto directly by the courts, or whether they have been transferred thereto in accordance with section 24 of the act.

" I am, therefore, of the opinion that the commissioners have full power and authority to parole any prisoners who are now inmates of the reformatory, under such rules and regulations as may be established by the commissioners.

" Very respectfully,

" Jos. H. Maupin, Attorney General."

The questions presented were discussed by Mr. Davis H. Waite, Mr. Eugene Engley and Mr. H. Riddell.

Mr. Justice Elliott delivered the opinion of the court.

1. Under section 3 of article 6 of the Constitution as amended the governor may submit to this court for its opinion any question he may deem proper, and when submitted, such question is entitled to respectful consideration. But the court must of necessity determine for itself the importance of such question as well as the solemnity of the occasion under which such opinion is sought to be obtained. The nature

of the answer proper to be returned under the particular circumstances of each case is a matter for judicial determination; this has been held in several cases. *Opinion of the Justices*, 49 Mo. 216; *In re District Attorneys*, 12 Colo. 468.

In some instances we have given opinions in response to executive inquiries in respect to the management of public affairs where no objections were interposed; *In re Capitol Commissioners*, 18 Colo. 220; and sometimes in cases of great emergency where objections were interposed; *In re Speakership*, 15 Colo. 524. So, also, we sometimes answer legislative questions concerning the constitutionality of pending bills, with the view to prevent the enactment of unconstitutional legislation, and the evils that might result therefrom. The question now submitted, however, does not relate to a pending bill, but to a statute already enacted—a statute which has been acted upon for several years, and under which it appears private rights or claims have arisen, which rights or claims might be seriously affected by an *ex parte* opinion of this court. *In re House Resolution No.* 25, 15 Colo. 602.

2. The question now propounded does not seek to obtain an opinion of the court as to the constitutionality of a statute. Upon oral argument the governor expressly disclaimed any intention to question the constitutionality of the act relating to the state reformatory; but he does question the constitutionality of the construction placed upon a single section of that act by Attorney General Maupin and acts thereunder by the board of penitentiary commissioners. An *ex parte* judicial opinion upon such a subject can scarcely be said to be contemplated by the constitution. The jurisdiction conferred by the constitution upon this court to answer executive and legislative questions, is extraordinary; the construction of statutes is within the ordinary jurisdiction of the courts. One of the most common subjects of judicial consideration is the construction of legislative acts as they arise in due course of litigation. If we were to extend the extraordinary *ex parte* jurisdiction of this court to executive questions involving the construction of legislative acts, it would be a most serious

innovation, and the tendency would be to transfer in a great measure the management of our state institutions from the executive to the judicial department of the government.

Again, it is apparent from the executive communication accompanying the question submitted, that the object of the inquiry in this case is not merely to obtain information by which the conduct of the penitentiary commissioners shall be guided in the future; it is not intimated that the commissioners desire an opinion of the court upon the subject; on the contrary, some of them were present by their attorneys upon the argument, and in the presence of the court and the governor protested against the promulgation of an opinion in this *ex parte* proceeding.

We cannot ignore the fact that serious differences have existed for some time between the executive and some of the officers of the state penitentiary in respect to the management of that institution, and that executive orders adverse to some of said officers have been made in reference thereto. It is possible that actual litigation in the courts may arise in consequence of such differences, as in the case of *Trimble v. The People ex rel. Phelps, ante,* 187. It is of the utmost importance, therefore, that this court should not, in any manner, indicate in advance its opinion as to the rights or claims of the parties which may be involved in such controversy. While we cannot avoid the exercise of jurisdiction in respect to such controversies when they actually arise and are brought to this court in the ordinary course of litigation, we may, and manifestly ought to, abstain from the expression of any opinion in advance which could possibly prejudice the rights of the parties or embarrass the court in case its jurisdiction should hereafter be invoked in the regular course of judicial proceedings.

We must, therefore, under the circumstances, respectfully decline to say more in response to the communication and inquiry submitted.