### [No. 4017.]

IN RE HOUSE BILL No. 99, TO SECURE TO LABORERS PAYMENT OF WAGES IN LAWFUL MONEY OF THE UNITED STATES.

1. LABORERS' WAGES—CONSTITUTIONAL LAW—QUESTION FROM HOUSE OF REPRESENTATIVES—JURISDICTION.

A bill for an act to secure to laborers and others the payment of their wages in lawful money of the United States, and prescribing penalties for its violation, involves private rights of individuals and corporations, and is not a bill concerning matters *publici juris*, such as will invoke the jurisdiction of the supreme court upon a question from the house of representatives as to its constitutionality under section 3, article 6 of the constitution authorizing the submission of questions to the court for its opinion.

2. SAME.

A resolution asking the supreme court for its opinion under section 3, article 6 of the constitution that points out numerous particulars in which the bill may conflict with provisions of the constitution, and involves a wholesale exposition of constitutional provisions relating to a general subject, will for that reason be refused consideration by the court.

*Original Proceeding.*

*Question from the House of Representatives.*

Mr. EVERETT BELL, Mr. CALVIN E. REED and Mr. JOHN H. MURPHY, for the bill.

Mr. D. C. BEAMAN and Mr. CALDWELL YEAMAN, against the bill.

PER CURIAM. The opinion of the court is asked by the house of representatives, now in session, as to the constitutionality of pending House Bill No. 99, entitled, "A bill for an act to secure to laborers and others the payment of their wages in lawful money of the United States, and prescribing penalties for a violation of this act, and repealing all acts and parts of acts in conflict herewith."

Sections 1 and 9 make it unlawful for any private corporation engaged in any kind of business in this state, and employing ten or more men to contract with any of its employees, in advance of labor and services performed, that such employee is to receive or take, in whole or in part, any goods, wares or merchandise, or any other kind or character of property whatever, except lawful money of the United States, as the price or pay for said labor. Other sections contain penalties for a violation of the act, and section 5 provides that a violation of any provision of the act by a domestic corporation shall be deemed sufficient cause for the forfeiture of its charter.

It was stated at the oral argument, and our examination of the record verifies the statement, that the resolution suggests forty-one particulars wherein the bill and its various parts may conflict with divers important constitutional limitations.

Soon after the adoption of the amendment under which the governor or either house of the general assembly may call upon this court on solemn occasions and upon important questions for its opinion, certain rules were established governing the practice to be observed in the exercise by the court of its extraordinary jurisdiction under this anomalous procedure. In *In the Matter of the Constitutionality of Senate Bill*

*No. 65*, 12 Colo. 466, in a carefully considered opinion by Chief Justice Helm, it is said :

" While the question must be one relating to purely public rights, it can only be propounded upon solemn occasions, and it must possess a peculiar or inherent importance not belonging to all questions of the kind.

\*       \*       \*       \*       \*       \*       \*       \*

" Upon mature investigation and reflection we are of the opinion that executive questions must be exclusively *publici juris*, and that legislative questions must be connected with pending legislation, and relate either to the constitutionality thereof or to matters connected therewith of purely public right.    We believe that the accuracy as well as the wisdom of this interpretation will commend themselves alike to the legislative judgment and the legal mind.

\*       \*       \*       \*       \*       \*       \*       \*

" We feel constrained to repeat and emphasize the thought heretofore expressed that the utmost vigilance and caution be exercised by both the general assembly and the court in acting under this novel constitutional authority.    There cannot well be too much moderation in the premises.    We note that, in those states which permit consultation with the justices, the privilege seems to be less often invoked than it has been here.    The attorney general is the natural as well as the statutory legal adviser of the executive and legislative departments.    His counsel should be solicited ; and only as a *dernier ressort*, upon the most important questions and the most solemn occasions, should the court be requested to act."

In *In re Appropriations*, 13 Colo. 316, this view was enforced in an able opinion by Mr. Justice Elliott, in which, referring to the decision in 12 Colorado, he says :

" The latter opinion was announced after much consideration, and is authority for saying that this court must decide for itself, as to any given question, whether or not it should exercise the jurisdiction of answering the same ; and that only questions of law *publici juris*, and not questions affecting private or corporate rights, should be thus answered.    That de-

cision was based upon the fundamental doctrine that for this court to answer questions of the latter class, *ex parte*, would inevitably result in disposing of the rights or claims of litigants without due process of law, without counsel, and without allowing them their day in court."

Again, in *In re Priority of Legislative Appropriations*, 19 Colo. 58, Chief Justice Hayt, speaking for the court, refers with emphatic approval to the doctrine of the preceding cases.

In *In re Fire and Excise Commissioners*, 19 Colo. 482, Mr. Justice Goddard, in an exhaustive opinion, thus refers to this question:

"In response to executive questions this court has in every instance endeavored to show that respect to the governor which is due to his high office. We have always recognized, as we do now, that the three governmental departments are co-ordinate, and that neither can lawfully encroach upon the province of the other. And while we concede to the governor full liberty to submit such questions as he may deem consistent with his *executive* powers, this court reserves for itself the right to express its opinion freely, in whole or in part, or not at all, as it shall deem consistent with its *judicial* powers and constitutional obligation. An opinion controlled or restricted by other influences than our own judgment and consciences would not be the opinion of the court."

The same reasoning, of course, applies to questions propounded by either branch of the general assembly.

Other decisions to the same effect might be cited which reiterate the same rule. Occasionally, as in the case last referred to, and in *In re House Bill*, 21 Colo. 46, there was a departure from it, but an examination of those cases shows that it was for reasons held conducive to the public welfare, and because the cases were of extreme emergency, neither of which reasons apply here.

In *In re Scrip Bill*, 23 Colo. 504, analogous to the bill now before us, it is true that the court returned an answer in which, after refusing to consider many of the propositions,

it was declared that the bill, in one respect, was unconstitutional. When we thus made answer we deviated somewhat from the established practice to which, at the first opportunity, we now return. In doing so, we are satisfied that we are pursuing the only safe course, and one that commends itself to the judgment of the thoughtful and earnest legislator, as well as to the members of the bar and publicists who have given to the subject careful attention.

For another reason we are precluded from answering. In *In re Irrigation*, 9 Colo. 520, the questions propounded to the court called for a construction of four sections of a single article of the constitution relating to the subject of irrigation. The court refused to comply with the request, and, in speaking of the purpose of the constitutional provision, among other things, said:

"Nor could the purpose have been to exact in response to a legislative inquiry a wholesale exposition of all constitutional provisions relating to a given general subject."

In the matter now before us we are asked to determine more questions than were called to the attention of the court under the resolution then before it, and if the court there refused to consider four interrogatories relating to four sections of one article of the constitution on the subject of irrigation, the reason here is much stronger why we should refuse to answer forty-one questions dealing with subjects equally intricate and important, and ranging over a wide field of constitutional law, both federal and state. The bill in question does not concern matters *publici juris*, but solely private rights of individuals and corporations; hence the interrogatories propounded do not come within the recognized class which properly invokes the jurisdiction of this court under the section of the constitution authorizing the submission of questions. As was said in the case last referred to:

"In view of the fact that we must act both as court and counsel, and in view of the other duties which we must necessarily perform, the period of time provided for a legislative session would hardly be sufficient to return safe and satisfactory answers to more than one such inquiry."

To answer forty-one of similar magnitude and of equal, or greater, difficulty would be altogether out of the question during a legislative session. For these reasons, and while again asserting our willingness to co-operate with either house, or both houses, of the general assembly in their important work of legislation, we are constrained, under the settled doctrine of this court, to withhold our opinion on the important questions propounded.